[No. 17066. Department Two. July 8, 1922.]

H. G. PEREGRINE, *Respondent*, v. WEST SEATTLE STATE BANK *et al., Appellants.*[1]

SALES (165)—WARRANTY OF TITLE—BREACH—MEASURE OF DAMAGES. Upon failure of title to a stolen automobile, the measure of damages is the price paid; and the purchaser is not limited to a less sum for which, by a new contract, he repurchased the car from the true owner.

SAME (112)—WARRANTY OF TITLE—REMOTE VENDORS. A warranty of title of personal property does not run against remote vendors, even though the bill of sale was to the vendee "his heirs, executors and assigns."

JUDGMENT (55)—RELIEF AS BETWEEN CODEFENDANTS. Where, on a failure of title to a stolen automobile, the purchaser, to avoid a multiplicity of suits, joined an immediate and remote vendor, and the former tendered the defense to the latter, who accepted the same, judgment for plaintiff should be against the immediate vendor only, for the price paid to him, and judgment over should be in favor of such vendor against the remote vendor for the price paid in the original sale.

[1]Reported in 208 Pac 35.

Appeal from a judgment of the superior court for King county, Ronald, J., entered September 10, 1921, upon findings in favor of the plaintiff, in an action for damages for breach of warranty, tried to the court. Affirmed.

*Shank, Belt & Fairbrook,* for appellants.
*Guie & Halverstadt,* for respondent.

HOLCOMB, J. — In November, 1920, appellant West Seattle State Bank sold to appellant Freedman a Dodge automobile for $950, as evidenced by a bill of sale. On November 8, 1920, Freedman conveyed the same automobile to respondent for $1,000. On December 24, 1920, 46 days after respondent purchased the car from Freedman, it was taken from respondent by the police as having been stolen from Mrs. Ida Selig. The car was taken by the police at the instance of the New Hampshire Fire Insurance Company, which had paid Mrs. Selig the theft loss of the car and taken from her a bill of sale. Soon after the car was taken by the police department, respondent paid the insurance company $800 and received from it a bill of sale of the car in which the consideration is stated to be $800, and which plaintiff testified was the actual consideration. Thereafter respondent demanded of the bank and of Freedman $1,000, and the matter not being settled, brought suit against the bank, Willock and Freedman. Freedman tendered the defense of the case to the bank, which defense was accepted and the bank answered for both itself and Freedman.

The only question involved on appeal is the measure of damages which respondent is entitled to recover, and the judgment which he is entitled to take against the bank and Freedman. Appellant contends that, while the difference in the amount of damage allowed

by the trial court and for which they contend is not
large, the principle involved is important and will be
of far reaching importance to automobile dealers,
banks, loan companies, and others dealing in auto-
mobiles which may subsequently turn out to be stolen.

It is the contention of the appellants that the meas-
ure of damages which respondent is entitled to re-
cover was the $800 which he paid the insurance com-
pany to retain possession of the car, and that in this
action he was entitled to recover this amount from the
defendant Freedman only, and not entitled to have
judgment in favor of Freedman against the bank in
this case.   It is further contended by the bank that,
in any event, it cannot be held liable for more than
$950, which defendant Freedman paid the bank, regard-
less of what Freedman subsequently secured by sale
to respondent.

Appellants urge that respondent's damages were
his actual loss, which was the amount he paid the in-
surance company for the privilege of retaining posses-
sion of the car.   This contention is based upon a false
premise.   Respondent had already paid $1,000 for the
car, and we have accepted the rule that ordinarily,
on breach of warranty of title to personal property,
the same as of real property, the vendee is entitled to
recover on the warranty of title the amount paid, with
interest from the time of eviction, or from the time of
dispossession, in the case of personal property.   *Bevan
v. Muir*, 53 Wash. 54, 101 Pac. 485, 32 L. R. A. (N. S.)
588; 24 R. C. L. 269.   In R. C. L. 269, the rule is thus
stated:

"In case of a breach of a warranty of title in the
conveyance of real estate, the rule adopted in most
jurisdictions is that the measure of damages is the
consideration paid with interest from the time of evic-
tion, and this rule is held in a number of jurisdictions

to apply as regards a warranty of the title to chattels, as the rule of damages in both cases should be the same, and this has been held true though the price paid was greater than the value.''

We consider that the correct rule and have applied the rule in cases of breach of warranty of title to real estate universally.

Of course, there may be circumstances transpiring subsequently, as that by long use of a chattel and its consequent depreciation in value, and not being dispossessed until long after the purchase, the vendee ought not to be allowed to recover damages in more than his actual loss. That was the case in a well considered case from Minnesota cited by appellant. *Hendrickson v. Back*, 74 Minn. 90, 76 N. W. 1019.

But the false premise relied upon by appellant lies in this: The respondent had already been dispossessed of the car. When he negotiated with the insurance company he repurchased it. What consideration he paid for the repurchase of the same car, of which he had been dispossessed because the title had wholly failed, was of no materiality in this suit. Nor did it conclusively prove the value of the car at the time of dispossession. It was a new bargain, and respondent was entitled to make as good a bargain as possible. Under the ordinary rule that the vendee is entitled to recover the purchase price of the car with interest from the time of dispossession, that is deemed to be the value of the chattel. There is no other evidence in this case of value at the time of dispossession. Appellants are not, therefore, entitled to have the value fixed as $800. Respondent is entitled to his $1,000 which he paid to his immediate vendor.

We consider, however, that the purchaser of personal property is not entitled to recover on warranties from his remote vendors except in exceptional cases,

for the breaches of warranty of quality, as were specified in *Mazetti v. Armour & Co.*, 75 Wash. 622, 135 Pac. 633, Ann. Cas. 1915C 140, 48 L. R. A. (N. S.) 213, and *Kramer v. Carbolineum Wood Preserving Co.*, 105 Wash. 401, 177 Pac. 771. The rule is well stated in 24 R. C. L. 159, as follows:

"The common law doctrine of covenants running with the land applies only to real estate, and it is well settled as a common law rule that the benefit of a warranty does not run with the chattel on its resale so as to give the subpurchaser any right of action thereon as against the original seller. This rule is fully applicable to the warranty of title,"

Both bills of sale before us contain the granting clause to the vendee, "his heirs, executors and assigns," and the respondent contends that the inclusion of the term "assigns" creates a privity of contract between him and the remote vendors so granting, citing 35 Cyc. 370, 371, and *Ranney v. Meisenheimer,* 61 Mo. App. 434.

The text of Cyc. cited, is:

"A warranty on the sale of personalty does not run with the property, and assignees of, or purchasers from the buyer cannot avail themselves thereof as against the original seller, unless the assignee or purchaser assumes payment of the original purchase-price, *or the warranty is specifically assigned to the second purchaser,*"   (Italics ours.)

In *Ranney v. Meisenheimer, supra,* the court stated:

"Warranties of chattels are available only between the parties to the contract, and not in favor of third parties, unless they claim as assignees of the warranty."

The warranty of title to the vendee and "assigns" in these bills of sale was not "specifically assigned." Each vendor made his own independent, separate war-

ranty of title to his vendee "and assigns," by his independent instrument of title and warranty.

In case of conveyance of real estate, such covenants in the grant run with the land, as has been stated. But, as in a transfer of personalty, such covenants do not ordinarily run with the thing, it must be held that a warranty of title must be specifically assigned by a vendee to his vendee in order to hold the remote vendor thereon.

Respondent, therefore, has no right of action against any remote vendor, but only against his immediate vendor. That, however, does not prejudice appellants in this case, except the bank to the extent of $50. The price paid by Freedman to his vendor, the bank, was $950. Freedman, being a necessary and proper defendant, tendered his defense to the bank, which accepted it on behalf of itself and for Freedman. The result was to prevent a multiplicity of actions.

The judgment should be in favor of respondent against Freedman for the sum of $1,000, and interest from the date of his dispossession of the automobile, namely December 24, 1920, and costs of trial. Since Freedman tendered his defense to the bank, which the bank assumed, he is entitled to a judgment over against the bank for $950, with interest from the date of the dispossession of respondent; but Freedman, only, is liable in the judgment to respondent.

In all other respects the judgment is affirmed, and with costs.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.